360 F.2d 931
 ASHEVILLE MICA COMPANY, Eugene Munsell & Co., and Schwab Brothers Corporation, Plaintiffs-Appellees,
v.
COMMODITY CREDIT CORPORATION, Defendant-Appellant.
MANCHARD TRADING CORPORATION, Plaintiff-Appellee,
v.
COMMODITY CREDIT CORPORATION, Defendant-Appellant.
UNITED MINERAL & CHEMICAL CORPORATION and Sigbert Loeb, Plaintiffs-Appellees,
v.
COMMODITY CREDIT CORPORATION, Defendant-Appellant.
 Nos. 241-243.
 Dockets 30034-30036.
 United States Court of Appeals Second Circuit.
 Argued May 9, 1966.
 Decided May 11, 1966.
 
 David E. Montgomery, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Dawnald R. Henderson, Asst. U. S. Atty., on the brief), for defendant-appellant, Commodity Credit Corp.
 George Trosh, Pokart & Pokart, New York City (Joseph Pokart, New York City, on the brief), for plaintiff-appellee, Schwab Brothers Corp.
 Alfred P. Walker, New York City, for plaintiffs-appellees, Asheville Mica Co., Eugene Munsell & Co. and Manchard Trading Corp.
 Joseph Eisinger, New York City, for plaintiffs-appellees, United Mineral & Chemical Corp. and Sigbert Loeb.
 Before WATERMAN, KAUFMAN and ANDERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This Court is no stranger to these actions. On a previous appeal,[1] we reversed and remanded, holding that the district judge[2] erred in declining to apply the parol evidence rule and in failing to look to extrinsic evidence as an aid in interpreting the ambiguous price escalation clause[3] appearing in identical contracts between the Commodity Credit Corporation (CCC) and each of the appellants, all of whom are producers of the strategic material, mica. We determined that the disputed escalation clause entitled appellants to a price increment for the mica which they sold to the CCC equal to the increase in price the Government Services Administration (GSA) granted for the mica it was independently purchasing from each of the appellants. We remanded the case, however, for a determination, inter alia, whether the price increment accrued to all of the appellants as of the time the first of their number entered into a new contract with GSA providing for an increased price or whether the increase became effective as to each appellant from the date of its separate subsequent contract with GSA.
 
 
 2
 On remand, Chief Judge Ryan, considering these questions in light of the record compiled at the initial trial before Judge Leibell, found that the disputed price escalation clause was ambiguous in several respects and that extrinsic evidence could therefore properly be considered for the purpose of determining whether the parties intended to create price uniformity between the CCC, the GSA and each appellant so as not to disrupt the highly sensitive mica market. In view of this goal of price parity, Chief Judge Ryan held that appellants were entitled to a price increment on their contracts with the CCC as of the time the GSA first raised prices in a contract with one of their number, Sigbert Loeb. And, after carefully considering the relevant case law and legislative history, Chief Judge Ryan concluded that the CCC was not immune from the running of lawful interest on judgments entered against it.
 
 
 3
 In light of the District Judge's considered and thorough exploration and exposition of the issues of fact and law involved in these actions, we affirm in all respects on the basis of his opinion (as amended by the memorandum endorsement on stipulation of May 4, 1965) reported at 239 F.Supp. 383 (S.D.N.Y. 1965).
 
 
 
 Notes:
 
 
 [1]
 The opinion is reported at 335 F.2d 768 (2d Cir. 1964)
 
 
 [2]
 The first district court opinion authored by Judge Leibell is not officially reported
 
 
 [3]
 The price escalation clause, section 2.b(1) of the CCC contracts, provided in pertinent part:
 * * * That in the event the General Services Administration * * * and the contractor should by agreement increase or decrease the unit prices under GSA's purchase contracts with the contractor for block and film mica of Indian origin, * * * such adjusted prices shall be used in determining the exchange value of block and film mica accepted under this contract when such adjusted prices are in effect * * *